IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

V.V.,

      Petitioner,

vs.                                                                        Civ. No. 20-560 KG/CG

DORA OROZCO, in her official capacity as
Warden of the Otero County Processing Center, et al.,

      Respondents.


MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Petitioner's Motion for Entry of a Temporary Restraining Order on his Petition for Writ of Habeas Corpus ("Motion"), (Doc. 4), filed June 9, 2020.  Petitioner asks the Court to: (1) Order Petitioner's immediate removal from Immigration and Customs Enforcement's ("ICE") adult detention center and to place him with the Office of Refugee Resettlement ("ORR"); and (2) Enjoin ICE from applying an unlawful age determination which prevents Petitioner from securing rights as an unaccompanied alien child ("UAC").  Since Respondents received notice of Petitioner's Motion and filed a response opposing it, the Court will treat Petitioner's Motion as a request for a preliminary injunction.  *See* Fed. R. Civ. P. 65; 13 *Moore's Federal Practice* § 65.31 (2020) ("[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction.").

      On June 12, 2020, the Court held a hearing at which counsel for both parties appeared. (Doc. 10) (Clerk's Minutes).  The Court granted Petitioner's Motion in part by ordering Petitioner immediately removed from ICE's adult detention center and placed into the custody of

ORR to provide appropriate detention and education.  (Doc. 12).[1]  The Court further ordered that

Petitioner shall be treated as a juvenile for purposes of detention and immigration proceedings

until the Court decides whether Petitioner's age determination will be reviewed and enjoined,

and the Court ordered further briefing on Petitioner's Motion.  *Id.*  Pursuant to that order, on June

19, 2020, Respondents filed a Motion to Dismiss and Response in Opposition to Petitioner's

Motion, (Doc. 14), and on June 26, 2020, Petitioner filed a Reply to the Motion, (Doc. 17), and

the parties filed a list of exhibits, (Doc. 19).  Having considered the parties' briefs, evidence

submitted by the parties, the record of the case, and relevant law, the Court grants the Motion in

part as set forth below.

I.     *Background*

Petitioner states he fled his native country, India, out of fear for his life and made his way

to the United States after traveling through Armenia, Suriname, Guyana, Brazil, Peru, Ecuador,

Colombia, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico.  (Doc. 1) at 7.  Petitioner

entered the United States on April 6, 2020, at a place not designated as a port of entry and was

apprehended by U.S. Border Patrol.  (Doc. 1) at 4; (Doc. 14) at 4.  Petitioner had no documents

that would allow him to lawfully enter the United States and no identification documents, and he

claimed his passport and phone were "stolen by the mafia in the Panamanian jungle."  (Doc. 14)

at 4.  When he was apprehended, Petitioner claimed his date of birth was July 7, 2002.  (Doc. 4)

at 4; (Doc. 14-1) at 2, ¶ 9 (Declaration of Acting Assistant Field Office Director Danielle M.

Hernandez) ("On April 6, 2020, [Petitioner] initially claimed his date of birth was July 7, 2002,

---

[1] At the hearing, the Court appointed Petitioner's attorneys as his "next friends" for purposes of representation in this matter under Federal Rule of Civil Procedure 17(c)(2).  *Id.*

when apprehended by U.S. Border Patrol; however, the agents processed [Petitioner] as an adult based on the information he provided during processing.").

On April 7, 2020, Petitioner was transferred to the custody of ICE pending removal proceedings. (Doc. 14-1) at 2, ¶ 5. Due to Petitioner's claim that he was a minor, ICE obtained information from the U.S. Visit and Immigrant Status Indicator Technology ("US VISIT"), which is a system that collects and analyzes biometric data such as fingerprints. *Id.* at 2, ¶ 7. The US VISIT data showed that on December 14, 2019, December 20, 2019, and January 8, 2020, Petitioner was documented as having a date of birth of November 19, 1998, and on January 21, 2020, Petitioner was documented as having a date of birth of December 20, 1992. *Id.* at 2, ¶ 8. Based on this information, ICE documented Petitioner's date of birth as November 19, 1998, on the Department of Homeland Security Form I-213. (Doc. 14) at 3-4; (Doc. 1-7).

On April 15, 2020, ICE requested a dental or skeletal age exam to assist in verifying Petitioner's age. (Doc. 14-1) at 2, ¶ 10. Because local dental offices were closed due to the COVID-19 pandemic, a bone density exam was completed by Southwest XRay on April 21, 2020. *Id.* The examination results are signed by Amy Maxwell, MD, DABR, and state in their entirety:

> The stated chronological age of this male patient is 21 years 5 months. As per the standards of Greulich and Pyle, the skeletal age is at least 19 years (the oldest available standard in the reference manual). The growth plates are completely fused consistent with a mature skeletal age.

(Doc. 1-5). One of Petitioner's family members provided ICE with a picture of a Government ID card from India ("Aadhar card") and a copy of a birth certificate which indicate Petitioner's date of birth is July 7, 2002. (Doc. 14-1) at 2, ¶ 11; (Doc. 1-3). ICE contacted an officer with the Consulate of India in Houston, who stated the birth certificate was issued by the Municipal

3

Corporation of Panipat Haryana and the Aadhar card indicates it was issued to Petitioner with a date of birth of July 7, 2002. (Doc. 14-1) at 3, ¶ 12. The officer stated: "If the person in question is the same as shown in the Aadhar card, then his [date of birth] would be the same as shown in the Aadhar card. I could not find his passport details." *Id.* After considering "the totality of the evidence," ICE determined Petitioner was an adult. *Id.* at 3, ¶ 16.

On May 13, 2020, an Immigration Judge held a hearing at which Petitioner appeared via videoconference and a translator and counsel for both parties appeared via telephone. (Doc. 1) at 7.[2] At the hearing, Petitioner submitted a copy of the birth certificate and Aadhaar card and testified as to his age and travel to the United States. Petitioner stated he provided a false date of birth when he arrived in Panama because he thought he would be kept in Panama or returned to India if he admitted he was a minor. Petitioner further testified that he did not know when he received the birth certificate and that he has had it since he was born. The Immigration Judge found Petitioner not credible because the date the birth certificate was issued was September 4, 2019, which was earlier than when Petitioner stated the birth certificate was issued, and because Petitioner was not truthful about being able to speak and understand Hindi. Relying on the bone density exam and the date of birth on the Form I-213, the Immigration Judge found Petitioner was an adult and assigned him the date of birth on the Form I-213 (November 19, 1998). On June 8, 2019, the Immigration Judge denied Petitioner's application for asylum and ordered him removed to India. (Doc. 14-3).

In his Section 2241 Habeas Corpus Petition, Petitioner argues ICE and the Immigration Judge improperly determined he was an adult by relying on the skeletal age scan, the Form I-

---

[2] The Court has listened to the audio recording of the May 13, 2020, hearing before the Immigration Judge, which was submitted to the Court by Respondents. *See* (Doc. 13) (Notice of Lodging of Audio Recording of Immigration Judge Hearing).

213, and the age he gave in Panama. (Doc. 1). Petitioner states that as a result of his age determination he is ineligible to pursue Special Immigrant Juvenile Status (a path to permanent residency) and is ineligible for placement in the "least restrictive setting" under 8 U.S.C. § 1232(c)(2). *Id.* at 13-14. He also argues the Immigration Judge's credibility finding "is a near death knell" for any asylum claim. *Id.* at 14. Petitioner's Section 2241 Petition raises the following claims:

1. Unlawful placement in ICE custody based on an improper age determination, in violation of 8 U.S.C. §§ 1232(b)(4) and 1232(c)(2)(A);

2. Unlawful detention at the Otero County Processing Center because it does not provide separate accommodations for juveniles, in violation of 8 C.F.R. § 1236.3(d);

3. Violation of his substantive due process rights under the Fifth Amendment; and

4. Violation of his procedural due process rights under the Fifth Amendment

(Doc. 1) at 21-23. In his Motion for a Preliminary Injunction, Petitioner asks the Court to:

1. Order Petitioner's immediate removal from ICE's adult detention center and to place him with ORR to provide appropriate detention and education; and

2. Enjoin ICE from applying the unlawful age determination which prevents Petitioner from eligibility for:
   a. Special Immigrant Juvenile Status under 8 U.S.C. § 1101(a)(25)(J);
   b. Initial jurisdiction of his asylum claim with U.S. Citizenship and Immigration Services under 8 U.S.C. § 1158(b)(3)(C);
   c. Physical placement with the Department of Health and Human Services pursuant to 8 U.S.C.§  1232(b)(1);
   d. The right to reunify with qualifying sponsors in the United States and be held in the least restrictive setting pursuant to 8 U.S.C. § 1232(c)(2); and
   e. If no sponsor is available to receive Petitioner, placement in the least restrictive setting available on Petitioner's eighteenth birthday including release on his own recognizance. 8 U.S.C. § 1232(c)(2).

(Doc. 4) at 22.

On June 12, 2020, the Court found: (1) Petitioner is likely to prevail on the merits based on evidence presented regarding unreliability of skeletal age evidence and copies of Petitioner's

birth certificate and Government of India Aadhaar card; (2) Petitioner would suffer irreparable harm from being held in an adult detention center as a minor and being prevented from seeking asylum as a minor if his age determination is found to be unlawful; and (3) the public interest and balance of equities weigh in favor of enjoining Respondents from detaining Petitioner with unrelated adults until Petitioner's challenge to his age determination is resolved.  (Doc. 12).  The Court granted Petitioner's Motion in part and ordered Petitioner removed from ICE's adult detention center and placed into the custody of ORR.  The Court further ordered that Petitioner shall be treated as a juvenile for purposes of detention and immigration proceedings until the Court decides whether Petitioner's age determination will be reviewed and enjoined.  *Id.*

## II.    *Statutory and Regulatory Framework*

Most immigration enforcement functions are carried out by the Department of Homeland Security ("DHS") and its sub-agency, ICE.  *See* 6 U.S.C. §§ 111, 251, 291.  Congress established a different legal framework, however, for the care and custody of UACs, who are defined as children under age eighteen who have no lawful immigration status in the United States and no parent or legal guardian in the United States available to provide care and physical custody.  *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b) (the William Wilberforce Trafficking Victims Protection Reauthorization Act, "TVPRA").  The TVPRA provides that, other than in exceptional circumstances, unaccompanied minors apprehended by immigration officials are transferred to the custody of the Department of Health and Human Services ("HHS").  8 U.S.C. § 1232(b)(3); *see also* 8 U.S.C. § 1232(b)(1) ("[T]he care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services.").  Moreover, "[e]ach department or agency of the Federal Government shall notify the Department of Health and Human Services

within 48 hours upon … the apprehension or discovery of an unaccompanied alien child, or …

any claim or suspicion that an alien in the custody of such department or agency is under 18

years of age."  8 U.S.C. § 1232(2)(A)-(B).

The ORR, a division of HHS, is thereafter responsible for "coordinating and

implementing the care and placement" of UACs.  6 U.S.C. § 279(a)-(b)(1)(A).  Congress has

established that these children "shall be promptly placed in the least restrictive setting that is in

the best interest of the child" and that "[i]n making such placements, the Secretary [of HHS] may

consider danger to self, danger to the community, and risk of flight."  8 U.S.C. § 1232(c)(2)(A).

While HHS only has authority over the care and custody of immigrant children, Congress

extended certain protections to newly adult immigrants who were formerly in the care and

custody of HHS.  For instance, when a UAC in the custody of HHS reaches eighteen years of age

and is transferred to the custody of the DHS, DHS "shall consider placement in the least

restrictive setting available after taking into account the alien's danger to self, danger to the

community, and risk of flight.  Such aliens shall be eligible to participate in alternative to

detention programs, utilizing a continuum of alternatives based on the alien's need for

supervision, which may include placement of the alien with an individual or an organizational

sponsor, or in a supervised group home."  8 U.S.C. § 1232(c)(2)(B).

To determine whether an individual is covered by the protections of the TVPRA,

Congress required HHS and DHS to "develop procedures to make a prompt determination of the

age," and "[a]t a minimum, these procedures shall take into account multiple forms of evidence,

including the non-exclusive use of radiographs, to determine the age of the unaccompanied

alien."  8 U.S.C. 1232(b)(4).  In accordance with this requirement, ORR and ICE developed age

determination policies and procedures.  *See* (Doc. 1-8) (ORR's Policy Guidelines for

"Determining the Age of an Individual Without Lawful Immigration Status") (found at

https://www.acf.hhs.gov/ orr/resource/children-entering-the-united-statesunaccompanied-

section-1, last visited June 29, 2020); (Doc. 4) at 6, n.3 (ICE's Policy Guidelines titled "Field

Office Juvenile Coordinator Handbook Enforcement and Removal Operations" 22 (2017))

(found at https://www.documentcloud.org/documents/4446357-Juvenileand-Family-Residential-

Management-Unit.html, last visited June 29, 2020).  Each of these policy guidelines require the

agencies to evaluate each case carefully "based on the totality of all available evidence, including

the statement of the individual in question."  (ORR Policy Guidelines, § 1.6); (ICE Policy

Guidelines, § 3.1.2).  Regarding the use of imaging technology, the agencies' policies require:

(1) a medical professional experienced in age assessment methods to perform the examination;

(2) the individual's ethnic and genetic background be taken into account; (3) dental and skeletal

maturity assessments may only be used in conjunction with other evidence; and (4) the

"examining doctor must submit a written report indicating the probability percentage that the

individual is a minor or an adult."  (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, §

3.1.2) (stating dental and skeletal bone maturity assessments should only be used "[a]s a last

resort").  In addition, the guidelines state: "If an individual's estimated probability of being 18 or

older is 75 percent or greater according to a medical age assessment, and this evidence has been

considered in conjunction with the totality of the evidence, ORR may refer the individual to

DHS."  (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, § 3.1.2) ( "If the probability of

an individual being 18 years old or older is 75 percent or greater, and the totality of the evidence

suggests the person is an adult, process the individual as an adult.").

III.    *Court's Authority to Consider Petitioner's Motion*

Petitioner asserts the Court has jurisdiction under Article I, section 9, clause 2, of the

United States Constitution (Suspension Clause), 28 U.S.C. § 2241, and 28 U.S.C. § 1331,

because Petitioner "is presently in custody under color of authority of the United States, and such

custody is in violation of the Constitution, laws, or treaties of the United States."  (Doc. 1) at 3-4.

Respondents, however, contend the Court does not have jurisdiction to consider Petitioner's

claims, Petitioner has not exhausted his administrative remedies, and Petitioner challenges his

conditions of confinement, not the fact or legality of his confinement, which is not a cognizable

habeas corpus claim.  (Doc. 14) at 2-3.  Respondents further argue that even if the Court were to

find Petitioner's birth date is July 7, 2002, he will soon turn eighteen, so his claims will soon be

moot.  *Id.* at 2.[3]

A.  *Jurisdiction*

Respondents first argue the following statutes preclude the Court from reviewing

Petitioner's age determination: 8 U.S.C. § 1226(e), 8 U.S.C. § 1158(b)(3)(C); 8 U.S.C. §

1252(a)(5), and 8 U.S.C. § 1252(b)(9).  (Doc. 14) at 10-12.  A federal district court is authorized

to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under

or by color of the authority of the United States … in violation of the Constitution or laws or

treaties of the United States.  28 U.S.C. §§ 2241(c)(1), (3).  "The writ of habeas corpus

historically provides a remedy to non-citizens challenging executive detention."  *Trinidad y*

*Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012); *see also Dept. of Homeland Sec. v.*

---

[3] Neither party alleges that this Court is the improper venue for this case, and the Court
concludes that venue is proper because Petitioner is being held in New Mexico.  *See, e.g.,*
*Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to
challenge his present physical custody within the United States, he should name his warden as
respondent and file the petition in the district of confinement.").

*Thuraissigiam*, 2020 WL 3454809, --- S. Ct. ---- (2020) ("Habeas … is the appropriate remedy

to ascertain whether any person is rightfully in confinement or not.") (citation and internal

quotation marks omitted).  However, habeas corpus review is not available for claims

"challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney

General has made regarding an alien's detention or release."  *Demore v. Kim*, 538 U.S. 510, 516

(2003) (citations omitted) (discussing 8 U.S.C. § 1226(e)).  In addition, habeas corpus review is

not available for claims "arising from the decision or action by the Attorney General to

commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), or

"arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9).

Indeed, pursuant to 8 U.S.C. § 1252(a)(5), courts of appeals "shall be the sole and exclusive

means for judicial review of an order of removal."

      Accordingly, the Court agrees with Respondents that the Court does not have jurisdiction

to review any discretionary judgments by ICE or the Immigration Judge, including Petitioner's

order of removal.  *See, e.g., Pelletier v. United States*, 653 Fed. Appx. 618, 622 (10th Cir. 2016)

(finding no federal court jurisdiction over modification of or release from conditions of asylum-

seeker's bond); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) ("[C]hallenges directed

solely at the agency's discretionary and factual determinations remain outside the scope of

judicial review" under 8 U.S.C. § 1252(a)(2)(B)(ii)).

      Nevertheless, Petitioner does not merely challenge his removal order or ask for

modification of his conditions of confinement.  Instead, Petitioner argues the agency failed to

comply with 8 U.S.C. § 1232 in deeming him an adult.  Importantly, "the extent of the

Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or

'decision,'" and "challenges to the statutory framework" authorizing detention are cognizable

habeas claims.  *Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830, 841 (2018); *see also*

*Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain

available as a forum for statutory and constitutional challenges to post-removal-period

detention."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the

discretionary process itself was constitutionally flawed[,] are cognizable in federal court on

habeas because they fit comfortably within the scope of § 2241.") (citation omitted).

As explained above, the TVPRA requires agencies to develop and comply with age

determination procedures and transfer to HHS custody any juvenile found to be a minor.  *See* 8

U.S.C. § 1232(b)(3)-(4).  Therefore, Petitioner's claim that ICE and the Immigration Judge did

not follow these statutory requirements in finding he was an adult is a "challenge to the statutory

framework," not to discretionary agency decisions.  Indeed, many federal courts have considered

claims regarding whether federal agencies have properly applied Section 1232's safeguards for

UACs.  *See, e.g., Ramirez v. U.S. Immigration and Customs Enforcement*, 310 F.Supp.3d 7, 17-

19 (D.D.C. 2018) (granting preliminary injunction where UACs alleged defendants did not

consider least restrictive placements in violation of 8 U.S.C. § 1232(c)(2)(B)); *C.T.M. v. Moor*,

2020 WL 1249757 (N.D. Tex) (considering petitioner's Section 2241 habeas claim challenging

agency's compliance with 8 U.S.C. § 1232(b)(4) and ORR's Policy Guide § 1.6 in age

determination); *N.B. v. Barr*, 2019 WL 4849175 (S.D. Cal.) (same); *B.I.C. v. Asher*, 2016 WL

8672760 (W.D. Wash.) (same); *I.J. v. Keeton*, No. CV-19-01904-SMB (D. Ariz. 2019) (same);

*L.B. v. Keeton*, CV-18-03435-JJT (D. Ariz. 2018) (same).

In contrast, in a case in this district, the court found it did not have jurisdiction to review

ICE's factual determinations in its discretionary placement decision under 8 U.S.C. §

1232(c)(2)(B), where the evidence established that ICE considered the least restrictive setting in

11

compliance with 8 U.S.C. § 1232(c)(2)(B).  *Godinez v. United States*, 2020 WL 3402059, \*4-5 (D.N.M.).  In reaching this decision, the court found the petitioner was "attempting to get around the jurisdictional bar" because although he alleged the respondents "failed whatsoever to consider placement in the least restrictive setting," he was in fact challenging the respondents' "discretionary decision made after considering the statutory factors and the evidence."  *Id.* at \*5. Since Petitioner here has provided evidence that Respondents have not complied with Section 1232(b)(4) and agency policies regarding the use of radiographs, the Court finds the holding in *Godinez* is distinguishable.

On June 25, 2020, the United States Supreme Court issued a decision finding that the provision of 8 U.S.C. § 1252(e) which limits habeas review of expedited asylum determinations under 8 U.S.C. § 1225(b) does not violate the Suspension Clause.  *Thuraissigiam*, 2020 WL 3454809, \*3, 7 (explaining the Suspension Clause provides the writ of habeas corpus shall not be suspended except in cases of rebellion or invasion, and further holding that asylum-seekers lack constitutional procedural due process rights for judicial review of negative credible-fear determinations).[4]  In reaching this decision, the Supreme Court reasoned that "Congress is entitled to set the conditions for an alien's lawful entry into this country" and, therefore, individuals who enter the country illegally have "no entitlement to procedural rights other than those afforded by statute."  *Id.* at 3.  The Supreme Court emphasized that habeas review is appropriate for challenges to an individual's confinement, whereas the asylum-seeker in that case "did not ask to be released" but sought "vacatur of his removal order and an order directing [DHS] to provide him with a new opportunity to apply for asylum and other relief from

---

[4] On June 29, 2020, Respondents filed a Notice of Supplemental Authority regarding this decision.  (Doc. 20).

removal."  *Id.* at *8, 10 (citation and internal quotation marks omitted) (stating the "legality of

the Respondent's detention is not in question").  The Court further explained:

> The relief that a habeas court may order and the collateral
> consequences of that relief are two entirely different things.
> Ordering an individual's release from custody may have the side
> effect of enabling that person to pursue all sorts of opportunities
> that the law allows.  For example, release may enable a qualified
> surgeon to operate on a patient; a licensed architect may have the
> opportunity to design a bridge; and a qualified pilot may be able to
> fly a passenger jet. But a writ of habeas could not be used to
> compel an applicant to be afforded those opportunities or as a
> means to obtain a license as a surgeon, architect, or pilot.

*Id.* at *11.

In this case, some of the relief requested in Petitioner's Section 2241 Petition is precluded

by 8 U.S.C. § 1252(e) and *Thuraissigiam*.  Specifically, Petitioner's request that the Court

declare that Petitioner is a UAC is not a challenge to the legality of his detention and, instead,

seeks review of an executive agency decision and to compel that Petitioner be afforded specific

opportunities.  *See* (Doc. 1) at 24-25.  However, for purposes of Petitioner's Motion for a

Preliminary Injunction, the issue before the Court is whether DHS shall be enjoined from

applying an age determination that Petitioner alleges violates 8 U.S.C. § 1232(b)(4) and the

agencies' policies regarding the use of radiography evidence.  *See* (Doc. 4) at 22.  Accordingly,

in contrast to the asylum-seeker in *Thuraissigiam*, at this stage of the case Petitioner challenges

the legality of his detention and seeks protection of procedural rights afforded him by statute.

Therefore, the Court concludes the Supreme Court's recent decision does not foreclose judicial

review of Petitioner's claim that ICE and the Immigration Judge failed to comply with TVPRA

in determining his age.

B.  *Exhaustion*

Next, Respondents argue Petitioner has not exhausted his administrative remedies because he did not request a bond hearing before an immigration judge and his appeal of his removal order is still pending.  (Doc. 14) at 13.  While "exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief," the Tenth Circuit allows an exception "if a petitioner can demonstrate that exhaustion is futile."  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

First, Petitioner is not challenging his removal order and, even if he were, the Court does not have jurisdiction to review a removal order under 8 U.S.C. § 1252(a)(5).  Accordingly, the fact that the appeal of his removal order is pending does not preclude review of Petitioner's claim regarding his age determination.  In addition, the Court agrees with Petitioner that exhaustion of administrative remedies would be futile because he claims he will turn eighteen on July 7, 2020, which is before he will be able to exhaust his appeal.  *See Ramirez*, 310 F.Supp.3d at 24 ("While it is true that an alien who is denied release by ICE may seek de novo review of that denial from an immigration judge, *see* 8 C.F.R. § 1003.19; 8 C.F.R. § 1236.1(d)(1), Defendants' reliance on this potential redetermination ignores the fact that it occurs weeks or months after ICE's initial denial of relief.").  Therefore, the Court concludes Petitioner has sufficiently demonstrated that exhaustion of administrative remedies would be futile.

C.  *Cognizable Habeas Claim*

Respondents also contend Petitioner has not submitted a cognizable habeas claim under 28 U.S.C. § 2241 because, by asking for a transfer to a different agency, he is challenging the conditions of his confinement.  (Doc. 14) at 13-15.  The Tenth Circuit has held that "a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a

14

shortened period of confinement, must do so through an application for habeas corpus.  In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action."  *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citations omitted); *see also Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)—not through federal habeas proceedings.").  Accordingly, "a habeas action is available to challenge the *underlying legal basis* for detention or the length of detention, but not conditions of confinement."  *Godinez*, 2020 WL 3402059, *2.

As explained, Congress has established a legal framework whereby HHS and ORR are responsible for the care and custody of UACs—not DHS and ICE.  *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b) ("[T]he care and custody of all [UACs], including responsibility for their detention, … shall be the responsibility of [HHS].").  Respondents argue "the core of [Petitioner's] claim" is that "the conditions of his confinement are inappropriate based on his alleged age."  (Doc. 14) at 14.  However, Petitioner's claim that DHS failed to comply with the TVPRA and agency policies is a challenge to the underlying legal basis of his detention with DHS.  Moreover, TVPRA and agency policies provide that UACs are afforded specific protections, including release to a family member or sponsor.  Therefore, Petitioner's claim is more than a challenge to the conditions of his confinement and is cognizable under Section 2241. *Cf. Palma-Salazar,* 677 F.3d 1031, 1035-36 (finding petitioner's challenge to being held in a maximum security prison sought a change to the place of his confinement so it must be brought pursuant to *Bivens* or Section 1983, and not Section 2241); *Godinez*, 2020 WL 3402059, *3

15

("[A] request for release because of COVID-19 is essentially a challenge to conditions of confinement and therefore habeas relief is not available under § 2241.") (citations omitted).

### D.  Mootness

Finally, Respondents contend Petitioner's claims will soon be moot, regardless of the agency's age determination, because he will turn eighteen by his own admission on July 7, 2002. (Doc. 14) at 15.  Article III of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "A case is moot when a party has already obtained all the relief that it has sought." *Schnitzler v. United States*, 761 F.3d 33, 37 (D.C. Cir. 2014) (citations omitted).  However, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (citation omitted).

Petitioner explains that his release from ICE custody and into ORR custody affords him different protections even after he turns eighteen.  Specifically, 8 U.S.C. 1232(c)(2)(B) requires DHS to consider placement in a less restrictive setting than adult detention once a minor in HHS custody reaches eighteen years of age.  (Doc. 4) at 3-4; (Doc. 17) at 8 (stating Petitioner "will retain UAC status … regardless once he turns 18").  In addition, if Petitioner is found to be a UAC, he is eligible to pursue his asylum claim before the U. S. Citizenship and Immigration Services instead of the Executive Office of Immigration Review, and pursue Special Immigrant Juvenile Status, which is a path to permanent residency.  *See* 8 U.S.C. §§ 1158(b)(3)(C) and 1101(a)(25)(J).  Therefore, because Petitioner will retain a concrete interest in the outcome of this case after he turns eighteen, the case is not moot.

For the reasons stated above, the Court concludes that it has jurisdiction to consider Petitioner's claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) and the agency's policies in determining whether Petitioner was a minor.  The Court further finds that exhaustion of administrative remedies for this claim would be futile, Petitioner's claim is a cognizable habeas claim, and the relief Petitioner seeks will not become moot when he turns eighteen.

IV.    *Preliminary Injunction*

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).  To obtain a preliminary injunction, Petitioner must establish: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (citation omitted).  In addition, courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (citation omitted).

A.    *Substantial Likelihood of Success on the Merits*

The Court finds Petitioner is likely to succeed on the merits of his claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) and the agencies' Policy Guidelines regarding the use of radiographs.  Section 1232(b)(4) requires HHS and DHS to

17

"develop procedures to make a prompt determination of the age of an alien," and that these procedures "shall be used by [DHS] and [HHS] for children in their respective custody." Accordingly, ORR and ICE developed policies regarding the use of imaging technology which require a medical professional experienced in age assessment methods to perform the examination, the individual's ethnic and genetic background be taken into account, the "examining doctor must submit a written report indicating the probability percentage that the individual is a minor or an adult." (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, § 3.1.2). In addition, ORR's Policy Guidelines state: "If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR may refer the individual to DHS." (ORR Policy Guidelines, § 1.6). Similarly, ICE's Policy Guidelines state: "If the probability of an individual being 18 years old or older is 75 percent or greater, and the totality of the evidence suggests the person is an adult, process the individual as an adult." (ICE Policy Guidelines, § 3.1.2).

The bone density exam completed by Southwest XRay on April 21, 2020, states in its entirety:

> The stated chronological age of this male patient is 21 years 5 months. As per the standards of Greulich and Pyle, the skeletal age is at least 19 years (the oldest available standard in the reference manual). The growth plates are completely fused consistent with a mature skeletal age.

(Doc. 1-5). Both ICE and the Immigration Judge relied on these results in making their age determinations. *See* (Doc. 14-1) at 3; (Doc. 13) (audio recording of May 13, 2020, hearing before the Immigration Judge). However, the examination does not state whether it was performed by a medical professional experienced in age assessment methods, whether

Petitioner's ethnic and genetic background was considered, or the probability percentage that Petitioner is a minor or an adult. Therefore, the Court finds Petitioner is likely to succeed on the merits of his claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) or with ORR and ICE Policy Guidelines. *See also N.B.*, 2019 WL 4849175 (finding petitioner likely to succeed on merits of claim that ICE improperly found petitioner was an adult based on dental radiograph, petitioner's misrepresentations that he was an adult at certain points in his travels to avoid being detained, and speculation that petitioner's documents were unreliable); *B.I.C.*, 2016 WL 8672760 (finding petitioner likely to succeed on merits of claim that ICE improperly relied exclusively on dental x-rays in violation of 8 U.S.C. § 1232(b)(4) and ICE policy); *I.J.*, No. CV-19-01904-SMB (same); *L.B.*, CV-18-03435-JJT (same); *cf. C.T.M.*, 2020 WL 1249757 (finding petitioner not likely to succeed on merits because Immigration Judge relied on petitioner's father's statement on visa form that petitioner was older than eighteen, in addition to dental radiograph, in making age determination).[5]

    B.   *Likely to Suffer Irreparable Harm*

    If the Court does not grant injunctive relief and continue Petitioner's placement with ORR until his age determination is made in compliance with agency policy, Petitioner would be subject to detention with adults and to a removal order. In addition, if Petitioner is found to be a minor, Petitioner would be able to seek asylum before the United States Citizenship and Immigration Services and pursue special Immigrant Juvenile Status, and, once he turns eighteen ICE must consider placement in the least restrictive setting available. *See* 8 U.S.C. §§

---

[5] The Court acknowledges the remarkable similarities between the versions of events offered by Petitioner here and the Petitioner in *R.R. v. Orozco*, CV-20-564 KG/GBW. Nevertheless, because the Court does not have jurisdiction to review the factual determinations made by ICE or the Immigration Judge, or to reweigh the evidence, these factual similarities do not affect the Court's decision.

1158(b)(3)(C), 1101(a)(25)(J), and 1232(c)(2).  Because this relief would be unavailable to Petitioner if his age determination is not revisited, the Court concludes that Petitioner would suffer irreparable harm if the injunction does not issue.

      *C.    Public Interest and Balance of Equities*

      In considering the public interest and balance of equities, the Court is mindful that DHS has substantial discretion in the area of immigration law.  Nevertheless, Petitioner has identified a specific statutory provision where the agency's discretion has been constrained by Congress.  Accordingly, the Court concludes the public interest weighs in favor of Petitioner receiving an age determination that complies with Section 1232(b)(4) and agency policy guidelines.  *See, e.g., Ramirez*, 310 F.Supp.3d at 33 ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate.").

      *D.   Additional Considerations*

      Finally, the Court considers whether the injunction mandates action, changes the status quo, or grants all the relief Petitioner seeks.  While issuing the injunction requires ORR to reconsider Petitioner's age determination, it does not necessarily change the status quo since Petitioner maintains he is a minor and seeks an injunction to preserve that status.  In addition, the Court is not granting all the relief Petitioner seeks as the Court is not reviewing the factual determinations made by ICE or the Immigration Judge or deeming that Petitioner is a UAC for purposes of his immigration proceedings.  In addition, the Tenth Circuit has explained that a "disfavored injunction" may still issue if the petitioner makes "a strong showing" that the likelihood of success on the merits and balance of harms "tilt in her favor."  *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232.  The Court concludes that Petitioner has made such a showing in this case.

*V.      Conclusion*

For the foregoing reasons, the Court grants Petitioner's Motion for a Preliminary

Injunction in part and enjoins Respondents from applying the age determinations made by ICE

and the Immigration Judge until ORR makes an age determination in accordance with 8 U.S.C. §

1232(b)(4) and ORR's Policy Guidelines.  The Court bases its decision on the evidence

submitted by the parties and the arguments in the parties' briefing, and the Court concludes it

does not have jurisdiction to reconsider the agency's factual determinations.  Therefore, the

Court finds that an evidentiary hearing is unnecessary and oral argument would not assist the

Court in its ruling. *See* (Doc. 14) at 21-22 (stating the Court should make its decision based on a

review of the evidence submitted by the parties); (Doc. 17) (stating counsel does not intend to

call Petitioner to testify at the hearing); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, at *3

(10th Cir.1998) (explaining courts are not required to hold evidentiary hearing prior to granting

or denying a preliminary injunction motion).

IT IS THEREFORE ORDERED that Petitioner's Motion for a Temporary Restraining

Order, (Doc. 4), which the Court now construes as a Motion for a Preliminary Injunction, is

granted in part as follows:

1. Respondents are enjoined from applying the age determination made by ICE and the

   Immigration Judge until ORR makes an age determination in accordance with 8

   U.S.C. § 1232(b)(4) and ORR's Policy Guidelines;

2. Petitioner shall remain in ORR custody and his date of birth shall be considered to be

   July 7, 2002, until ORR completes an age determination; and

3. ORR shall complete an age determination in compliance with 8 U.S.C. § 1232(b)(4)

   and its Policy Guidelines within fourteen days of the date of this Order.

All other relief requested in Petitioner's Motion for Preliminary Injunction is denied for lack of jurisdiction

IT IS FURTHER ORDERED that the parties shall notify the Court of the status of this case within thirty days of the date of this Order.

UNITED STATES DISTRICT JUDGE